IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WILLIE JEROME MANNING                                                  PETITIONER

vs.                                                                          CIVIL ACTION NO.: 1:05CV256-P

CHRISTOPHER EPPS, ET AL.                                           RESPONDENTS

**ORDER**

      Petitioner is an inmate at Parchman Penitentiary who has been sentenced to death for the December 11, 1992, murders of two Mississippi State University students, Jon Steckler and Tiffany Miller. Presently before the Court are Petitioner's motions for (1) the production of evidence and funds for DNA testing[1]; (2) the appointment of experts[2]; and (3) the subpoena of records that are in the possession of the Department of Human Services.[3] Respondents have not filed a motion in opposition to Petitioner's requests.

      In a capital habeas case, the appointment of experts or funds for investigative assistance may be authorized only upon a showing that the funds are "reasonably necessary" to develop claims raised in the petition. *See* 18 U.S.C. § 3599(f). Funds are "reasonably necessary" if Petitioner can demonstrate "a substantial need" for the investigative or expert assistance. *See Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000). In order to demonstrate that the funds are "reasonably necessary" to support a claim, Petitioner must demonstrate how the anticipated

---

[1] Docket entry no. 61

[2] Docket entry no. 62

[3] Docket entry no. 63

1

results will show a constitutional flaw in his trial. *See Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997). Aside from requesting expert assistance, Petitioner's motions include requests for discovery, which is governed by a separate standard. In a federal habeas case, discovery may be granted upon a showing of "good cause." Rule 6(a) of the Rules Governing § 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

### DNA Testing

Petitioner requests that the Court allow DNA testing of evidence collected by law enforcement during the course of the investigation of this case. Specifically, Petitioner requests DNA testing of the scrapings taken from beneath the fingernails of victims Jon Steckler and Tiffany Miller, hair found in Miller's right hand, hair found in Steckler's left hand, and the hair fragments found in Miller's car and identified by an FBI examiner as originating from an African-American. Petitioner also requests an opportunity to inspect the rape kit performed on Miller, as the kit was not available when post-conviction counsel attempted to inspect the evidence stored at the Oktibbeha County Sheriff's Department. Petitioner asserts that DNA testing is necessary because there is good cause to believe the evidence will exonerate him, and the results will allow him to establish the merits of his claims or establish exceptions to any claim that may be held procedurally barred.

At trial, no physical evidence was produced linking Petitioner to the crime scene. This Court previously granted Petitioner leave to inspect the physical evidence in the custody of the Oktibbeha County Sheriff's Department, and Petitioner received a certified copy of the reports from the Mississippi Crime Lab in connection with this case. Petitioner asserts that those reports

2

indicate that hair was found in the sexual assault kit taken from Miller, but that there is no indication that an examination of that hair was made. He asserts that the hair taken from Steckler's left hand and Miller's right hand was also forwarded to the Mississippi Crime Lab, but there is no indication that testing was performed on those exhibits. The fingernail scraping taken from Miller and Steckler underwent serological testing only. Also during the course of the investigation, several items were submitted to the FBI for examination. Among those exhibits were some hair fragments taken from Miller's car, which were designated by the FBI lab as Q43 and Q44. At trial, Chester Blythe, a special agent with the FBI who testified as an expert in hair and fiber analysis, testified that the samples originated from an African-American, though the fragments were not sufficient to compare to known samples. Petitioner maintains that the prosecutor repeatedly stressed to the jury that the hair evidence linked Petitioner to the crime scene.

Petitioner asserts that advances in DNA testing technology would now allow a discriminatory evaluation of all of the collected evidence, and that the testing would exonerate him. He argues that if it is shown that the hair originated from someone other than Petitioner or the victims, it would almost conclusively show that Petitioner was not in Miller's car. Petitioner also argues that DNA from another person that may be found in the fingernail scrapings or from the hands of the victims would essentially eliminate the likelihood that Petitioner was involved in the crimes.

In describing the procedure he employed in conducting the autopsies of the victims, Dr. Steven Hayne testified that he took scrapings from beneath the fingernails of both Steckler and Miller. Dr. Hayne stated at trial that there did not appear to be human blood or tissue underneath

the victims' fingernails, and that neither body bore any defensive wounds.  Dr. Hayne also testified that there was no evidence that Miller endured a sexual assault.  The report generated by the FBI concerning the evidence it tested indicates that no semen was found on any clothing Miller was wearing the night of the murders, and it further indicated that no hairs originating from an African-American were found on either victim's person or belongings.  The "debris" from the victims' hands was included in the testing.  (*See* Mot. Ex. 3 and 4, FBI Lab Report).

Petitioner has failed to establish that DNA testing of the fingernail scrapings and the hair found in the victims' hands is reasonably necessary to pursue the claims in his petition, nor is there a basis for the Court to authorize inspection of the sexual assault kit performed on Miller. Based on the record before the Court, there is no reason to suspect that Petitioner's DNA *would* be found among the collected samples.  This evidence was not used against Petitioner at trial, and the absence of Petitioner's DNA in the samples would not undermine confidence in the jury's verdict.  There is no basis in the record to suggest that DNA from someone other than the victims is likely to be present in the samples.  Therefore, the Court finds Petitioner's requests as to this evidence not reasonably necessary, and the requests will be denied.

Next, the Court considers the hair fragments found in Miller's vehicle, which were introduced at trial.  Petitioner argued at trial that the prejudicial impact of the hair analysis evidence outweighed its probative value, and the trial court admitted the evidence over Petitioner's objection.  On direct appeal, Petitioner argued that forensic hair analysis is unreliable, and that the trial court erred in admitting the evidence.  The Mississippi Supreme Court held the claim procedurally barred, as Petitioner did not object to the evidence on the basis of its reliability at trial.  *See Manning v. State*, 726 So.2d 1152, 1180-81 (Miss. 1998).  The court

4

noted that the forensic expert did not claim that the hair matched that of Petitioner, and that it was left to the jury to decide whether the hairs belonged to Petitioner. *Id.* The substance of Petitioner's federal habeas claim is that forensic hair analysis is unreliable and that its admission was error. A federal habeas court does not ordinarily review the correctness of state court evidentiary rulings, and it may grant relief only when the trial error "is material in the sense of [being a] crucial, critical, highly significant factor" that rendered the trial fundamentally unfair. *See, e.g., Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986). Mississippi courts recognize forensic hair analysis in criminal trials. *See, e.g., Bevill v. State*, 556 So.2d 699, 707 (Miss. 1990). At trial, expert testimony was given only that the hair found in Miller's car exhibited characteristics associated with the African-Americans. Unlike a case where expert testimony has scientifically linked a specific piece of evidence to a particular perpetrator, the testimony in this case did not attempt to establish any particular individual as the source of the hair. As Petitioner states in his motion, the presence of a hair fragment originating from an African-American in Miller's vehicle proves only that an African-American was in the vehicle or had contact with someone in the vehicle sometime between the car's manufacturing and the murders at issue. Even if DNA testing could conclusively prove that it was not Petitioner's hair that was found in the vehicle, those results would not impeach the testimony given at trial, much less exonerate Petitioner. A DNA result which excluded Petitioner as the source of the hair would not meet the threshold for proving a freestanding claim of actual innocence, assuming that one exists. *See, e.g, House v. Bell*, 547 U.S. 518, 555 (2006) (finding petitioner fell short of threshold showing necessary to raise claim of actual innocence). Additionally, whether the hair found in Miller's vehicle actually belongs to Petitioner has no bearing on his claim that hair

analysis is junk science that should have been excluded from trial. There exists no nexus between the services sought and a claim of constitutional dimension. *See Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997). Petitioner's request for DNA testing of the hair fragments found in Miller's vehicle will be denied.

**Funds for Expert Assistance**

Petitioner also requests that the Court grant him funds to hire a neuropsychologist and social worker to aid in the development of facts relevant to his claim that trial counsel rendered ineffective assistance during the mitigation phase of trial. Petitioner maintains that his requests for assistance were denied in State court despite evidence that Petitioner suffers from neurological impairments. Petitioner also asserts that he needs funds to hire a social worker to conduct interviews and evaluate records relevant to the extreme poverty, violence, and neglect that surrounded Petitioner's upbringing. Petitioner maintains that he sought expert assistance in State court to fully develop his claims and was denied, thereby depriving him of the necessary resources to present his claim.

The Court does not find that Petitioner's requests for funds for expert assistance are reasonably necessary. While a full battery of neuropsychological tests might demonstrate the presence or absence of impairment, Petitioner need not prove that he has a neurological impairment to support his claim that trial counsel rendered ineffective assistance in investigating and presenting the available mitigating evidence. Post-conviction counsel has investigated Petitioner's background and submitted evidence concerning the availability of mitigating evidence at the time of Petitioner's trial, which includes his history of head injuries and alcohol abuse, along with a history of Petitioner's exposure to violence, poverty, and neglect. The Court

does not find that the appointment of an expert to interpret Petitioner's social history or conduct a neuropsychological evaluation is necessary to his claim of ineffective assistance of counsel. The Court also notes that Petitioner seeks a minimum of $16,125 in federal funds to obtain expert services. Funding requests for expert or investigative assistance generally must be within the limits allowed by the statute, which is currently $7,500.00. *See* 18 U.S.C. 3599(g)(2).

## Social History Records

Petitioner requests this Court enter an order allowing him to issue subpoenae to the Department of Human Services ("DHS") of Oktibbeha County, Mississippi, requiring DHS to produce records concerning Petitioner and his immediately family. The Court previously denied Petitioner's request that he be allowed to issue subpoena to obtain DHS documents, determining that Petitioner and his family members could request the release of their own records. The Court also denied Petitioner's subsequent motion to reconsider the ruling. Petitioner submits that DHS has refused to release the records, despite having the signed releases of Petitioner and his family members.

The content of the records, which were available at the time of trial, have bearing on Petitioner's claim of ineffective assistance of counsel in investigating and preparing a case in mitigation. The Court determines good cause exists to grant the requested discovery. The Court, having been persuaded that DHS will not release the records to Petitioner without an order requiring compliance with the subpoenae, hereby determines Petitioner should be allowed to issue subpoena to obtain the records in the possession of DHS relating to Petitioner and his family's background to the extent that Petitioner produces signed releases from any person with an interest in the protected information.

7

Therefore, it is hereby **ORDERED** that:

1. Petitioner's motion to produce evidence for DNA testing is **DENIED**[4];

2. Petitioner's application for expert funds is **DENIED**[5]; and

3. Petitioner's request for permission to subpoena the records of himself and his family that are in the possession of the Department of Human Services of Oktibbeha County is **GRANTED** as to each person from whom Petitioner has written consent for the release of their records.[6]

**SO ORDERED** this the 3rd day of October, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Docket entry no. 61

[5] Docket entry no. 62

[6] Docket entry no. 63